**UNITED STATES of America, Plaintiff,**

**v.**

**Albert OBERMAN, also known as Al Lawrence, Defendant.**

**Cr. No. 1609.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Jan. 24, 1963.

William Medford, U. S. Atty., James O. Israel, Robert J. Robinson, Asst. U. S. Attys., Asheville, N. C., for plaintiff.

Joseph J. Lyman, Washington, D. C., Sol Levine, Charlotte, N. C., for defendant.

WARLICK, District Judge.

This is a criminal action in which the defendant is charged with having violated Title 18 U.S.C.A. § 1010, under a bill of indictment which charges that the defendant for the purpose of obtaining Federal Housing Administration (hereinafter referred to as FHA) insured loans, uttered and published as true FHA Title I Credit documents knowing at the time that said documents were false and fraudulent in that the entire proceeds of the loans were not to be used for the purposes as stated in the loan documents. The bill of indictment contains four counts involving transactions with William Sherron Fink and wife, June Fink; Robert L. Farmer and wife, Veva C. Farmer; Horace R. Seabolt and wife, Elecia R. Seabolt; and Bruce Clanton and wife, Betty Clanton. The indictment was returned in November, 1961, by the Grand Jury at Asheville. Trial of the case began on October 2, 1962, in the Charlotte Division. The defendant, through his counsel, entered a plea of not guilty and executed proper waiver of his right to trial by jury, leaving the determination of his guilt or innocence to the Court as is provided in Rule 23(a). Prior to the commencement of the trial the witnesses were segregated, on motion of defendant, until the completion of their respective testimony.

At the conclusion of the evidence the defendant, through his counsel, entered a request that the Court find the facts specially, as is set forth in Rule 23(c) of the Federal Rules of Criminal Procedure. Pursuant to such request the following general and special findings of fact are made.

GENERAL FINDINGS OF FACT:

The Court finds the defendant, Albert Oberman, guilty as charged in Counts 1, 2, 3 and 4 of the bill of indictment found in Case No. 1609.

SPECIAL FINDINGS OF FACT:
COUNT ONE

1.

That approximately two days prior to December 18, 1959, an individual came to the home of William S. Fink and June Fink on List Avenue in Concord, North Carolina and talked with William Fink relative to installing aluminum siding on the Fink residence; that at that time William Fink advised that he was financially unable to have this done; that at that time Fink was advised that the man would return and bring his *boss* with him.

2.

That on or about December 17, 1959, the man referred to in Finding of Fact No. 1 returned to the Fink residence in company with the defendant, Albert Oberman; that the defendant, Albert Oberman, at that time falsely identified himself as Al Lawrence, all for obvious reasons as will subsequently appear.

3.

That the defendant talked with William Fink and wife about putting aluminum siding on their house; that Fink and his wife advised Oberman that they were unable to afford this; that at that time Oberman advised that he could fix that and inquired what the trouble was; that he was advised that the Finks owed other bills, whereupon Oberman advised that he would give the Finks money enough to pay off their bills if they would have the siding put on their home; that Oberman informed them that he would see to the preparation of the necessary papers; that a Title I Credit Application for Property Improvement Loan was thereupon filled out by the defendant and signed by William Fink and wife, June Fink (Government Exhibit No. 8); that the total amount of the loan signed for by the Finks was $3,300.00; that the defendant advised the Finks that he would be able to give them $750.00 in cash in

addition to fulfilling the siding contract; that the defendant left the Fink residence with the executed loan documents, well knowing at that time that they were false in that the entire loan proceeds were not to be used by the Finks for home improvements and well knowing and intending that the loan documents would be submitted to the FHA for insurance.

### 4.

That the loan documents were presented to the First Union National Bank of North Carolina, Charlotte, North Carolina, for the purpose of obtaining an FHA Improvement Loan; that based upon statements appearing in said Credit Application and attached documents, including the executed promissory note (Government Exhibit No. 9), the bank issued its check in the amount of $3,-300.00 payable to Mr. or Mrs. W. S. Fink for loan proceeds; that thereafter the check was taken by the defendant to Mr. Fink at his home and at such time Fink endorsed the check and returned it to the defendant; that the amount of the check was subsequently deducted from the bank's account; that on the day following the endorsement of the check by Fink, defendant returned to the Fink residence and gave Mr. Fink $750.00 in cash; that the Finks used the $750.00 to pay off a debt owed by them to a finance company, even though the defendant advised Fink to pay off his car indebtedness.

### 5.

That the First Union National Bank of North Carolina, Charlotte, North Carolina, after issuing its check for the loan to the Finks made up a Title I Loan Report stating the amount of the loan, the type of home improvement covered by the loan, and forwarded this report to the FHA; that thereafter the bank received from the FHA authorities a bill for insurance premiums for insuring said loan; that the bank paid the premium and the loan was insured by the FHA; Thereafter the Fink note was in default and the bank forwarded the note to the FHA and at such time the FHA paid the bank for the note under their insurance.

### 6.

That at all times during the transaction between the defendant, Albert Oberman, and the Finks, the defendant, under the name of Al Oberman, was carried on the FHA Precautionary List and had been on such list since June 30, 1953. The Precautionary List is a list of dealers or individuals that is published by the FHA naming those individuals or companies, and the purpose of it is to advise lending institutions that for some time in the past this individual or contractor has had some dealings in FHA Title I that were not according to the regulations. The list is intended to put lending institutions on notice as to who they are dealing with and the FHA will not approve loan transactions submitted by these individuals; that the name of Al Lawrence as used by defendant did not appear on said Precautionary List at the time of the Fink transaction but was made a part of the Precautionary List subsequent to the transaction as of July 29, 1960. That the defendant, in using the assumed name or alias, Al Lawrence, well knew that he was blacklisted, so to speak, and that by so doing he perpetrated a vicious and determined fraud on the United States of America.

### COUNT TWO

### 1.

That on or about December 17, 1959, an individual named Oscar Gilbert came to the home of Robert L. Farmer and wife, Veva Farmer at 1106 Grove Street, Kannapolis, North Carolina; that at that time Gilbert discussed with Mr. and Mrs. Farmer the matter of putting aluminum siding on their house, and wanted to bring his *boss* by to talk further about it; that Robert L. Farmer advised Gilbert that he could not afford to put aluminum siding on the house, but agreed that Gilbert could bring his *boss* by anyway.

**2.**

That on or about December 18, 1959, Oscar Gilbert returned to the home of Robert L. Farmer in company with the defendant, Albert Oberman; that at that time Oscar Gilbert introduced the defendant as Al Lawrence.

**3.**

That at that time the defendant offered to put siding on the house; that Robert L. Farmer advised the defendant that he could not afford to put siding on the house in that he was having trouble with back taxes and other bills; that the defendant stated to Farmer that he could show him how to get all of his payments into one payment, whereupon Robert L. Farmer and wife agreed with the defendant to go ahead and get a loan to put on siding and get all their payments into one.

**4.**

That at that time, the defendant using the name of Al Lawrence wrote a contract which was signed by Robert L. Farmer and Veva C. Farmer; that the contract entered called for certain repairs to the house for a total amount of $2,200.00 (Government Exhibit No. 6-B); that simultaneously with the execution of the contract, the defendant filled in the top part of the Title I FHA Credit Application for Home Improvement Loan (Government Exhibit No. 6-A); that at that time the application for the loan of $2,200.00 was signed by Robert L. Farmer and Veva C. Farmer; that at the same time a promissory note was filled out by the defendant and signed by the Farmers; that at that time it was understood and agreed that the defendant would put siding on the house and give to the Farmers from the loan proceeds $600.00 in cash; that the defendant left the Farmer residence with the executed loan documents, well knowing at that time that they were false in that the entire loan proceeds were not to be used by the Farmers for home improvements and well knowing and intending that the loan documents would be submitted to the FHA for insurance.

**5.**

That at no time did Robert L. Farmer nor his wife, Veva C. Farmer, go to a bank or lending institution or make any individual effort of their own accord to borrow the money from the bank; that all matters having to do with the loan were handled by the defendant; that at no time did anyone from a bank or lending institution approach the Farmers regarding the loan.

**6.**

That the loan documents were presented to the First Union National Bank of North Carolina, Charlotte, North Carolina, for the purpose of obtaining an FHA Improvement Loan; that based upon statements appearing in said Credit Application and attached documents, including the attached contract (Government Exhibit No. 6-B), the bank issued its check in the amount of $2,200.00 payable to Mr. or Mrs. Robert L. Farmer for loan proceeds (Government Exhibit No. 7); that thereafter, the defendant returned to the residence of the Farmers, bringing with him the check for the loan proceeds; that at such time Robert L. Farmer endorsed the check and gave it to the defendant; that at that time the defendant counted out and delivered to Robert L. Farmer $600 in cash; that thereafter Robert L. Farmer took the $600.00 and paid other bills, which was well known and intended by the defendant; that subsequently the check which had been delivered by the defendant and endorsed by Robert L. Farmer was, through regular banking channels, paid and deducted from the funds of the First Union National Bank of North Carolina.

**7.**

That the First Union National Bank of North Carolina, Charlotte, North Carolina, after issuing its check for the loan to the Farmers made up a Title I Loan Report stating the amount of the loan, the type of home improvement covered by the loan, and forwarded this report to the FHA; that thereafter the bank received from the FHA authorities a bill for insurance premiums for insur-

ing said loan; that the bank paid the premium and the loan was insured by the FHA.

### 8.

That at all times during the transaction between the defendant, Albert Oberman, and the Farmers, the defendant, under the name of Al Oberman, was carried on the FHA Precautionary List and had been on such list since June 30, 1953. The Precautionary List is a list of dealers or individuals that is published by the FHA naming those individuals or companies, and the purpose of it is to advise lending institutions that for some time in the past this individual or contractor has had some dealings in FHA Title I that were not according to the regulations. The list is intended to put lending institutions on notice as to who they are dealing with and the FHA will not approve loan transactions submitted by these individuals; that the name of Al Lawrence used by defendant did not appear on said Precautionary List at the time of the Farmer transaction but was made a part of the Precautionary List subsequent to the transaction as of July 29, 1960. Again the defendant well knowing that the government would not have entered into any business transaction with him, used an alias, that of Al Lawrence, so that he could perpetrate an additional fraud as was done in this instance and thereby enrich himself to the detriment of the United States.

### COUNT THREE

### 1.

That on or about November 29, 1959, an individual named Oscar came to the home of Horace R. Seabolt and wife, Elecia R. Seabolt, at 2807 Royal Avenue, Kannapolis, North Carolina; that at that time the man named Oscar talked with the Seabolts about placing aluminum siding on their house; that Horace Seabolt told him he could not afford it at which time the man named Oscar said he would bring his bossman back to talk with the Seabolts about it.

### 2.

That on or about November 30, 1959, the defendant, Albert Oberman, came to the Seabolt residence; that at that time the defendant represented himself to be Al Lawrence.

### 3.

That the defendant examined the exterior of the Seabolt house and then discussed the matter of putting siding on the house with Horace Seabolt; whereupon Horace Seabolt advised defendant that he could not afford the siding at that time because he owed too many back bills; that defendant told Seabolt to figure up what he owed and that they would combine the bills for payment; that at that time Seabolt figured up what he owed and the defendant figured the cost of the siding and told Seabol that the single monthly payment for all debts and siding would be $58.55 per month; that Horace Seabolt and wife agreed to these terms.

### 4.

That immediately after the Seabolts agreed to the terms the defendant prepared the contract (Government Exhibit No. 1–B), FHA Title I Credit application (Government Exhibit No. 1–A) and Note (Government Exhibit No. 10) and Horace R. Seabolt and Elecia R. Seabolt signed these instruments; that the back bills which were computed by Horace Seabolt and wife together with the defendant were in the amount of $1,200.00; that the defendant estimated the cost of the aluminum siding to be $1,600.00 and a few dollars and for the purpose of the instruments as they were drawn approximately $1,227.00 was added to this amount by the defendant for a total of $2,830.00 on the loan documents; that after the papers were signed they were taken away by the defendant, who well knew at that time that they were false in that the entire loan proceeds were not to be used by the Seabolts for home improvements and he well knowing and intending at that time that the loan documents would be submitted to the FHA for insurance.

**5.**

That at no time did Horace R. Seabolt nor his wife, Elecia R. Seabolt, go to a bank or lending institution or make any individual effort of their own accord to borrow the money from the bank; that all matters having to do with the loan were handled by the defendant; that at no time did anyone from a bank or lending institution approach the Seabolts regarding the loan.

**6.**

That the loan documents were presented to the First Union National Bank of North Carolina, Charlotte, North Carolina, for the purpose of obtaining an FHA Improvement Loan; that based upon statements appearing in said Credit Application and attached documents, including the attached contract (Government Exhibit No. 1–B) and Note (Government Exhibit No. 10) the bank issued its check in the amount of $2,830.00, payable to Mr. or Mrs. Horace R. Seabolt for loan proceeds (Government Exhibit No. 2); that thereafter the defendant returned to the Seabolt's house bringing with him the $2,830.00 check for the loan proceeds and requested Mrs. Seabolt to endorse the check; that Mrs. Seabolt did endorse the check and returned it to the defendant whereupon defendant gave to Mrs. Seabolt his check in the amount of $1,200.00; that the proceeds from the $1,200.00 check were spent by the Seabolts to pay back bills and that none of the $1,200.00 was spent for home improvements which the defendant well knew and intended; that subsequently the $2,830.00 check which had been delivered by defendant to Mrs. Seabolt and endorsed by her was, through regular banking channels, paid and deducted from the funds of the First Union National Bank of North Carolina.

**7.**

That the First Union National Bank of North Carolina, Charlotte, North Carolina, after issuing its check for the loan to the Seabolts made up a Title I Loan Report stating the amount of the loan, the type of home improvement covered by the loan, and forwarded this report to the FHA; that thereafter the bank received from the FHA authorities a bill for insurance premiums for insuring said loan; that the bank paid the premium and the loan was insured by the FHA.

**8.**

Again, since this is a separate count it is found as a fact: That all times during the transaction between the defendant Albert Oberman, and the Seabolts, the defendant, under the name of Al Oberman, was carried on the FHA Precautionary List and had been on such list since June 30, 1953. The Precautionary List is a list of dealers or individuals that is published by the FHA naming those individuals or companies, and the purpose of it is to advise lending institutions that for some time in the past this individual or contractor has had some dealings with FHA Title I that were not according to the regulations. The list is intended to put lending institutions on notice as to who they are dealing with and the FHA will not approve loan transactions submitted by these individuals; that the name of Al Lawrence as used by the defendant did not appear on said Precautionary List at the time of the Seabolt transaction but was made a part of the Precautionary List subsequent to the transaction as of July 29, 1960. And again by such nefarious means the defendant enriched himself and violated the law thereby and further evidenced his utter disregard for a proper business dealing.

## COUNT FOUR

**1.**

That on or about November 18, 1959, a woman named Marleen came to the home of Bruce and Betty Clanton at 1100 Mt. Olivet Road, Concord, North Carolina, and made an appointment with Mr. and Mrs. Clanton for them to see her boss the next day.

**2.**

That as a consequence of this appointment, the defendant came to the Clanton residence on or about November 19,

1959, and introduced himself as Mr. Lawrence; that there he discussed with the Clantons some aluminum siding; that the defendant was told by Bruce Clanton that he could not afford the aluminum siding because some two months prior he had bought a 1959 Simca and owed for it, and he further informed the defendant that he could not take on any more obligations; that the defendant then advised that he could secure for Mr. Clanton the money to pay off this car and at the same time reduce his payments, which were in the amount of $85.00 monthly; that the defendant further stated that he would get the extra money to pay off the car by adding that amount to the loan to be gotten for the cost of the aluminum siding and putting the whole matter on a five-year loan; that the Clantons agreed to this and the defendant filled out a contract (Government Exhibit No. 3–B) an FHA Title I Credit Application for Home Improvements (Government Exhibit No. 3–A), and a Note (Government Exhibit No. 11); that the Clantons signed these loan documents; that after the documents were signed the defendant took the papers with him after advising the Clantons that he intended to get the loan through the First Union National Bank; that he also advised the Clantons that he would bring back the money to pay off the car; that at the time defendant left the Clanton residence with the executed loan documents that he well knew that they were false in that the entire loan proceeds were not to be used by the Clantons for home improvements and he well knew and intended that the loan documents would be submitted to the FHA for insurance.

## 4.

That the loan documents were presented to the First Union National Bank of North Carolina, Charlotte, North Carolina, for the purpose of obtaining an FHA Improvement Loan; that based upon statements appearing in said Credit Application and attached documents, including the contract (Government Exhibit No. 3–B) and promissory note

(Government Exhibit No. 11) the bank issued two checks, one in the amount of $1,500.00 payable to Mr. or Mrs. Bruce Clanton (Government Exhibit No. 4) and one for $1,490.00 payable to Mr. or Mrs. Bruce Clanton (Government Exhibit No. 5) both checks being designated for Title I loan proceeds; that thereafter the defendant delivered the two checks to Mrs. Clanton at her home and requested that Mrs. Clanton endorse the check for $1,490.00 and return it to him as payment for the aluminum siding which she did; that the second check in the amount of $1,500.00 was given by the defendant to Mrs. Clanton and all of the proceeds of that check were used by the Clantons to pay off the indebtedness on their car, which the defendant well knew and intended; that subsequently the two checks which had been delivered by defendant to Mrs. Clanton and endorsed by her were, through regular banking channels, paid and deducted from the funds of the First Union National Bank of North Carolina.

## 5.

That the First Union National Bank of North Carolina, Charlotte, North Carolina, after issuing its check for the loan to the Clantons, made up a Title I Loan Report stating the amount of the loan, the type of home improvement covered by the loan, and forwarded this report to the FHA; that thereafter the bank received from the FHA authorities a bill for insurance premiums for insuring said loan; that the bank paid the premium and the loan was insured by the FHA.

## 6.

Again it is found as a fact and repeated herein that at all times during the transaction between the defendant, Albert Oberman, and the Clantons, the defendant under the name of Al Oberman, was carried on the FHA Precautionary List and had been on such list since June 30, 1953. The Precautionary List is a list of dealers or individuals that is published by the FHA naming those individuals or companies, and the purpose of it is to advise lending institu-

tions that for some time in the past this individual or contractor has had some dealings in FHA Title I that were not according to the regulations. The list is intended to put lending institutions on notice as to who they are dealing with and the FHA will not approve loan transactions submitted by these individuals; that the name of Al Lawrence as used by defendant did not appear on said Precautionary List at the time of the Clanton transaction but was made a part of the Precautionary List subsequent to the transaction as of July 29, 1960.

It would be rather useless to again elaborate in a fact finding sort of way on the defendant's vicious approach as is set out herein. It all adds up to the fact that the government of the United States, under the terms of one of its salutory laws in which it desired to make possible aid to certain borrowers, who otherwise would be without such ability, finds itself the victim of a nefarious scheme set in motion by the defendant, Albert Oberman styling himself under the alias of Al Lawrence.

Following the argument of counsel with respect to the question of guilt or innocence, I entered a general finding of guilty against the defendant, Oberman, on all four counts.

During the argument heard with respect to the pleas for mercy, it was made to appear that this defendant at a term of court held in the Middle District on August 30, 1955, was found guilty of a similar violation. This was during the period that Judge Hayes was incapacitated through an attack and presumably a visiting judge held such term. In any event the defendant was given a sentence of twelve months, which was suspended and he was placed on probation for two years, and was adjudged to pay a fine of $300.

The conviction herein on the four counts in the bill results from a direct violation on the defendant's part and at a time when he was on the Precautionary List.

Following the defendant's being given an opportunity to speak in his own behalf, as Rule 32 would provide, the four counts were consolidated and the defendant sentenced to a term of four years, in such institution as may be designated by the Attorney General of the United States.

Appearance bond was set and the defendant was permitted his liberty. Appeal bond was likewise determined and following the defendant's demand, these Specific Findings are made.